UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ALI EDWARDS,

                               Plaintiff,

     vs.                                        9:04-CV-320
                                                      (FJS/GJD)

DAVID SMITH, Correctional
Officer,

                               Defendant.

_____

ALI EDWARDS, Plaintiff pro se
NELSON R. SHEINGOLD, Asst. Attorney General
     for Defendant

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

    This matter has been referred to the undersigned for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

    In this amended civil rights complaint, plaintiff alleges that defendant Smith used excessive force against plaintiff in violation of plaintiff's Eighth Amendment rights. (Dkt. No. 10).  Plaintiff seeks compensatory damages for the alleged violation.

    Presently before the court is defendant's motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 49).  Plaintiff has responded in opposition to the motion. (Dkt. No. 54).  For the following reasons, this court agrees with defendant and will recommend dismissal of the complaint.

## DISCUSSION

### 1. <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.*  However, when the moving  party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.*

### 2. <u>Facts</u>

Plaintiff's amended complaint is only one page long. (Dkt. No. 10).  In the complaint, plaintiff simply states that on December 19, 2003, he was transferred to Coxsackie Correctional Facility and that on January 7, 2004, he appeared before the Program Committee.  Plaintiff then alleges that defendant Smith assaulted plaintiff because plaintiff used foul language while speaking with Sergeant Spath.

On November 21, 2005, defense counsel took plaintiff's deposition.  The transcript of the deposition has been attached as an exhibit to defendant's motion for summary judgment.  Plaintiff appeared before the Program Committee so that he could be assigned to a program during his incarceration at Coxsackie. Transcript (T) at 16.

2

The Program Committee informed plaintiff that he would be assigned to a school program. (T. 16-17). Plaintiff testified that he got into an argument with the members of the Committee because they were trying to "force" him to go to school, when he just wanted a porter job. *Id.*

Plaintiff became agitated, and Sergeant Spath[1] told plaintiff to sit back, "shut the fuck up,"[2] and listen to what the Program Committee had to say. (T. 17). Plaintiff testified that because of Sergeant Spath's language, plaintiff told Sergeant Spath to "go fuck yourself." (T. 17). Plaintiff concedes that he used profanity directed at Sergeant Spath. Plaintiff stated that defendant Smith was standing approximately three to four feet from plaintiff, and when defendant Smith heard plaintiff swear at Sergeant Spath, defendant Smith became "hostile," asked plaintiff what he was doing, and told plaintiff to put his hands in his pockets. (T. 18-19).

Instead of putting his hands in his pockets, plaintiff asked defendant Smith what he meant by his order. (T. 19, 72). Plaintiff testified that defendant Smith then "charged" plaintiff. (T. 19). Plaintiff stated that he was sitting at a table, with another chair next to him, with the seat of the chair facing plaintiff. (T. 21-22). Plaintiff stated that when Smith came toward plaintiff, plaintiff turned his body and "rammed right into the chair." (T. 19, 38-39). Plaintiff stated that his body "just shifted" and that his

---

[1]Sergeant Spath was seated in an adjoining room, approximately fifteen feet away from plaintiff. (T. 17).

[2] Plaintiff testified that Sergeant Spath used this profanity with plaintiff. Sergeant Spath's language makes no difference to the result of this case, and thus, the court will assume for purposes of this Report that Sergeant Spath used profanity, however, the court does not make any finding in this regard.

ribs hit the chair. (T. 20, 39). Plaintiff stated that he was "reacting" to defendant

Smith putting his hands on plaintiff, and that defendant Smith had one hand on

plaintiff's shoulder. (T. 39, 40, 43).

Plaintiff states that after the incident, defendant Smith helped plaintiff up, and

"that was it." (T. 20, 41). Plaintiff was then taken to the infirmary. (T. 50-51).

Plaintiff stated that the entire incident, from the time he walked into the Program

Committee to the time he was taken to the infirmary was five minutes. (T. 21).

Plaintiff stated that he told the nurse in the infirmary that he was in pain. (T. 52).

Plaintiff alleges that the nurse who examined him in the infirmary found two bruises,

one on plaintiff's chest and one on his ribs. (T. 51). Plaintiff also testified that the

nurse noted bruises and a swollen face. (T. 51).

Plaintiff was later taken to the Special Housing Unit (SHU) because of the

disciplinary violations that had occurred during the appearance before the Program

Committee. (T. 60). Plaintiff states that, a few days after the incident, he asked for an

"emergency x-ray" of his ribs, but medical personnel refused. (T. 60). Instead,

plaintiff was given Ibuprofen for the pain. (T. 60). Plaintiff assumed that his rib was

fractured, but at his deposition, he admitted that he had never before fractured his ribs,

and he only assumed that his rib was broken because he was in pain for "weeks." (T.

60).

### 3.    **Excessive Force**

The Eighth Amendment prohibits the "'unnecessary and wanton infliction of

pain.'" *Baker v. Willett*, 42 F. Supp. 2d 192, 196 (N.D.N.Y. 1999)(quoting *Estelle v.*

4

*Gamble*, 429 U.S. 97, 103 (1976); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).
When the use of excessive force is alleged, the court must determine whether the force
"was applied in a good faith effort to maintain or restore discipline or maliciously and
sadistically for the very purpose of causing harm." *Whitely v. Albers*, 475 U.S. 312,
320-21 (1986)(quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*,
414 U.S. 1033 (1973)).  In order to meet the constitutional standard for excessive
force, the defendants' conduct must be "'inconsistent with the contemporary standards
of decency' and 'repugnant to the conscience of mankind.'" *Whitely*, 475 U.S. at 327.

Minor uses of physical force do not reach the constitutional level as long as the
force used is not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503
U.S. 1, 9-10 (1992).  However, the court must determine the need for the force, the
relationship between the need and the amount of force used, the extent of the injury
suffered, the extent of the threat to the safety of staff and inmates, and any efforts
made to temper the severity of a forceful response. *Whitely*, 475 U.S. at 321.

In this case, defendant disputes that he "charged" plaintiff because even
according to plaintiff's testimony, defendant Smith was only three to four feet away
from plaintiff.  Regardless of the distance, however, it appears from plaintiff's own
testimony, that he reacted to defendant Smith's movement, and turned his own body,
causing him to ram into the chair.  Plaintiff's deposition testimony makes the incident
sound more like an accident than an assault.  The court does note that plaintiff's
response to defendant's motion for summary judgment states that defendant Smith
"intentionally pushed" plaintiff into the chair, however, ***nothing*** in plaintiff's

5

deposition testimony supports this new allegation.  Plaintiff's response to defendant's motion also implies that there may have been some other "punching" involved, but plaintiff was in a state of "shock" so he would not have remembered that.  Once again, there is absolutely ***nothing*** in plaintiff's complaint or in his deposition testimony that would support this new allegation.

Defendant has also submitted plaintiff's medical records from the incident and from several days after the incident, together with the affidavit of Nurse Pat Byron, who examined plaintiff in the infirmary after the January 7, 2004 incident.  Nurse Byron states in her affidavit that she examined plaintiff immediately after the incident.  Byron Aff.  ¶ 5, Ex. A.  Nurse Byron conducted a physical examination of plaintiff while he was stripped to his shorts. Byron Aff. ¶ 6.  Plaintiff denied that he had suffered any injuries, and Nurse Byron noted only two red marks on plaintiff's chest.  *Id.*  There was no other indication of injury or fresh trauma. *Id.*  Plaintiff had normal range of motion, and he did not request medical treatment at that time. *Id.*

Plaintiff was also examined by other medical personnel later the same day when he was admitted to SHU. Byron Aff. ¶ 7.  The medical records indicate that plaintiff told the medical staff that he did not need any medical treatment at that time, and the records note that there were no signs of injury or fresh trauma. Byron Aff., Ex. A at p.3.  It was also observed that plaintiff had normal range of motion. *Id.*

On January 9, 2004, plaintiff requested an x-ray.  Nurse Byron states in her affidavit that because of plaintiff's request, she conducted another physical examination. Byron Aff. ¶ 8.  Nurse Byron did not observe any swelling of plaintiff's

chest and his breathing appeared clear and equal. *Id.* Nurse Byron states that her findings did not justify further testing. Byron Aff. Ex. A at 4. Nurse Byron also states that plaintiff's symptoms were not consistent with a fractured rib. Byron Aff. ¶ 9. Nurse Byron states that fractured ribs generally cause swelling, difficulty breathing, and an abnormal range of motion. *Id.* Plaintiff did not exhibit any of these symptoms. *Id.*

The medical records indicate that plaintiff sought medical attention five days later on January 14, 2004, but did not complain about his chest at all. Byron Aff. ¶10, Ex. A at 4-5. At that time, plaintiff complained that he had been raped while at another facility and only requested Athlete's Foot cream from the medical personnel. *Id.* Plaintiff was examined again on January 15 and 21, 2004. Again, plaintiff did not complain about his chest or ribs on either of these occasions. *Id.* The court notes that the extent of the injury suffered is only one factor to be considered, and that an inmate who is not seriously or significantly injured may still establish a claim for excessive force if he can show that the force used was more than de minimus or was "repugnant to the conscience of mankind," and that defendant acted with a sufficiently culpable state of mind. *See United States v. Walsh*, 194 F.3d 37, 47-48 (2d Cir. 1999).

In this case, however, based upon plaintiff's own testimony at his deposition, together with the medical records created after the incident, this court finds that there is no question of fact regarding excessive force. Plaintiff's testimony indicates that he reacted quickly when he thought that defendant Smith was "charging" him, and plaintiff fell into the chair that was next to him at the table. Plaintiff testified that the

only actual physical contact he had with defendant Smith was Smith's hand on plaintiff's shoulder.

Plaintiff's response to the summary judgment motion does not raise an issue of fact. Plaintiff now seems to allege that defendant Spath intentionally swore at plaintiff because he knew that plaintiff would swear back at him, giving defendant Smith the opportunity to assault plaintiff. This allegation is complete speculation and not even supported by plaintiff's own sworn deposition testimony. Plaintiff's allegation that Smith intentionally pushed plaintiff into the chair is also not supported by plaintiff's *sworn testimony* at his deposition. The court notes that even in plaintiff's response, while attempting to allege intentional actions by defendant Smith, plaintiff still states that Smith extended his arm toward plaintiff "which caused [plaintiff] out of fear to turn to the side and collide with a chair beside me." (Dkt. No. 54 at p.4). This statement makes it clear that plaintiff *himself turned and collided with the chair*.[3]

The de minimus (if any) force used is further supported by the lack of injury suffered by plaintiff. Although plaintiff testified that he had a broken rib, there is absolutely no indication that plaintiff suffered that injury. As stated by Nurse Byron, plaintiff had two marks on his chest, but his range of motion and his breathing were completely normal. Although he testified that he had bruises and a swollen face, there is no support for this allegation in the medical records. Plaintiff never complained about his ribs again after Nurse Byron examined him on January 9, 2004 and

---

[3] Plaintiff's subsequent statement that he does not know whether defendant Smith threw any punches while "on top" of plaintiff because plaintiff was "in shock" is again *pure speculation* and unsupported by *any of the undisputed facts in this case*. (Dkt. No. 54 at p.4).

determined that an x-ray was not necessary.

Thus, based upon plaintiff's own testimony, together with the medical records, showing that plaintiff had only minimal injury in the form of red marks on his chest, this court finds that there is no question of fact regarding the use of force, and defendant is entitled to judgment as a matter of law.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 49) be **GRANTED**, and the amended complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**
*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 19, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge